UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

          v.      Case No.: 3:17-cr-83-PG

ALEXYS RIVERA CUEVAS,

 Defendant.
_____/

## DISPOSITIVE MOTION TO SUPPRESS

COMES NOW, the Defendant ALEXYS RIVERA CUEVAS, by and through his undersigned counsel, and hereby files this his dispositive motion to suppress, and in support states as follows:

### I. INTRODUCTION & SUMMARY OF THE ARGUMENT

> Fourth Amendment rights are not mere second-class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government . . . But the right to be secure against searches and seizures is one of the most difficult to protect. Since the officers are themselves the chief invaders, there is no enforcement outside of court . . . Courts can protect the innocent against such invasions only indirectly and through the medium of excluding evidence obtained against those who frequently are guilty.[1]

In 2013, the United States Justice Department (hereinafter "USDOJ") entered into a civil rights agreement with the Puerto Rico Police Department (hereinafter "PRPD") to institute meaningful reform to the rampant misconduct that plagued its personnel. During the agreement's initial disclosure, the USDOJ assured the Puerto Rico people that:

---

[1] *United States v. Khounsavanh*, 113 F.3d 279, 285 (1st Cir. 1997)(citations and internal marks omitted)

1

The department's December 2012 civil lawsuit followed a thorough investigation of PRPD's policies and practices. The investigation uncovered wide-ranging and long-standing deficiencies that gave rise to a pattern and practice of police misconduct, including use of excessive force, use of unreasonable force designed to suppress protected speech and unconstitutional searches and seizures.[2]

Simultaneously, the USDOJ has prosecuted several police officers for fabrications of arrest, prosecutions and abuse of power.

Defendant Alexys Rivera Cuevas (hereinafter "Rivera Cuevas") is charged with violating 18 USC § 922(g)(1), for felon in possession of a firearm, allegedly a .40 caliber Smith and Wesson pistol. The indictment stems from a traffic stop effectuated by PRPD officers based upon a claim of illegal window tints of the car being driven by Rivera Cuevas. Specifically, the police officer alleges that at approximately 10:40 pm he was able to see that the windows of the car owned and being driven by Mr. Cuevas Rivera were illegally tinted. The police officer stopped Mr. Rivera Cuevas and he and his partner approached the vehicle. One of the police officers alleges that he was able to see through the window tints with the aid of a flashlight and that he saw the subject firearm sitting in plain view on the passenger seat. The traffic stop, in turn, yielded the warrantless seizure of the firearm and arrest of Mr. Rivera Cuevas.

However, PRPD lacked any reasonable grounds for the intervention. Their contention of reasonable suspicion to detain defendant's vehicle is unavailing for several reasons. First, the PRPD police officer cannot reasonably see a moving car at night and know that the window tints are too dark. Second, if the window tints are too dark as claimed then the second police officer cannot reasonably see inside the car, even if using a flashlight. Third, the PRPD claim that the firearm is in plain view is not reasonable because the police officer admits to having to use a flashlight in order to see inside the car. Fourth, the PRPD claim that Mr. Rivera Cuevas would

---

[2]https://www.justice.gov/opa/pr/justice-department-enters-far-reaching-agreement-commonwealth-puerto-rico-reform-puerto-rico.

leave a firearm sitting on top of the passenger seat knowing that he is a felon and knowing that police officers have just stopped his car and are approaching is not reasonable.

Therefore, the stop of Mr. Rivera Cuevas and the warrantless seizure of the firearm was not reasonable nor legal and was in violation of Supreme Court precedent in *Arizona v. Gant*.[3] The search and seizure conducted in the present case by the PRPD was in violation of Mr. Rivera Cuevas's Fourth Amendment rights. Mr. Rivera Cuevas hereby moves this Honorable Court to suppress the evidence seized in this case as fruit of the poisonous tree.[4]

## II. STANDING

When a vehicle is stopped by the police, all occupants are assumed as "seized" for Fourth Amendment considerations, and may challenge the legality of the seizure. *Brendlin v. California*, 551 U.S. 249 (2007). The driver has standing to challenge the illegal detention of the vehicle. *Arizona v. Johnson*, 555 U.S. 323 (2009). The Court confirmed that for the duration of a traffic stop, a police officer effectively seizes "everyone in the vehicle," the driver and all passengers. *Brendlin* v. *California,* 551 U.S. at 255.

Each occupant of a car has a right to challenge the propriety of a traffic stop under the Fourth Amendment. Although Courts occasionally use the term "standing" as shorthand for this status, the real implication is that the individuals' Fourth Amendment interests were affected by official actions. *Rakas v. Illinois*, 439 U.S. 128, 138-39 (1978). The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *Id.* However, there is a rebuttable presumption of unreasonableness where the arrest emanates from a warrantless intervention. As a result, it is the Government's responsibility to demonstrate that the warrantless search or seizure was reasonable

---

[3] 556 U.S. 332 (2009).

[4] *Wong Sun v. U.S.*, 371 U.S. 471, 484-85 (1963); *U.S. v. Crews*, 445 U.S. 463, 471 (1980)

and falling under any of the well-delineated exceptions to the Fourth Amendment's warrant requirement. *See United States v. Lopez, 380* F.3d 538, 543 (1st Cir. 2004).

Mr. Rivera Cuevas was both the owner and sole occupant of the seized vehicle in the present case. Therefore, he has standing to question the constitutional propriety of the traffic stop and warrantless search and seizure in question.

### III. FACTUAL BACKGROUND

#### A. Facts as represented by the Government

According to all reports and documentation provided by the government as part of discovery, a PRPD officer alleges that on February 2, 2017, at approximately 10:40 pm, he was able to see that the windows of the car owned and being driven by Mr. Cuevas Rivera were illegally tinted. The police officer claimed to have seen Mr. Rivera Cuevas driving southbound on road 853 in the City of Carolina, but does not specify any cross streets or nearby landmarks. The police officer stopped Mr. Rivera Cuevas and he and his partner approached the vehicle. The police officer alleged that he was able to see through the window tints with the aid of a flashlight and that he saw the subject firearm sitting in plain view on the passenger seat. The police officer asked Mr. Rivera Cuevas if he had a firearm permit and Mr. Rivera Cuevas responded that he did not. The PRPD immediately arrested Mr. Rivera Cuevas. At an unknown point the PRPD entered the vehicle and retrieved the firearm. At an unknown point, law enforcement determined that Mr. Rivera Cuevas was a felon. Thus, the traffic stop, in turn, yielded the warrantless seizure of one .40 caliber Smith & Wesson pistol, 7 rounds of .40 caliber assorted ammunition, a .40 caliber pistol magazine, and an iPhone. The traffic stop for illegal window tints and subsequent warrantless seizure of the firearm also yielded the detention and arrest of Mr. Rivera Cuevas for felon in possession of a firearm.

At an unknown point in time, the police officer measured the window tint by using a

"Fotometro" light transmission machine. The claimed result ranged from 16% to 29% light transmission – meaning the window tint permitted only 16-29% of light to pass through the windows. Mr. Rivera Cuevas was issued a traffic citation for illegal unidirectional window tint. The traffic citation states that the basis for the citation is "use of window tints 17%," however, does not cite by number which section of the Puerto Rico Transit Law that was violated. The government provided documentation of the machine used to measure the light transmission level of the window tint on Mr. Rivera Cuevas's vehicle as well as certification that the police officer was trained to operate the machine, however, no documentation was provided as to the age of the machine nor whether the machine has been certified or ever tested for accuracy.

**B.      Facts as represented by Defendant**

On February 2, 2017, Mr. Rivera Cuevas was seated in the driver's seat of a vehicle that was parked off the street and had been so parked for approximately 15 minutes. While he was using his telephone, the PRPD approached the car and ordered him out of the car. The police entered the car without a warrant and discovered the subject pistol. The police asked him about a subject by the name of "El Arabe," whether he was there waiting for him, and that Mr. Rivera Cuevas should not play dumb by claiming that he did not know who they were talking about.

Mr. Rivera Cuevas was the owner of the 2017 Toyota Tacoma in which he was seated. He purchased the car with factory installed rear passenger and rear tinted windows. He subsequently installed tinted windows that were 35% light transmission on the front windows of the vehicle.

The "Fotometro" machine was not tested properly and thus not properly certified for use, resulting in wrong light transmission percentages. The "Fotometro" machine may have been beyond its shelf life of 10 years age. These three claims are based upon the government's failure to provide documentation as to the testing and certification of the machine as well as the

government's failure to provide documentation as to the age of the machine.

## IV. APPLICABLE LAW

### A. General Fourth Amendment Law and Jurisprudence

The Fourth Amendment guarantees the individual right to be free from unreasonable searches and seizures in the absence of a warrant supported by probable cause. *See* U.S. Const. Amend. IV. The United States Supreme Court has interpreted the Probable Cause requirement to grant authorization for a search absent judicial order "when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris,* 568 U.S. 237, 133 S.Ct. 1050, 1055 (2013). However, the Courts have warned that probable cause is an amorphous test that cannot be precisely quantified. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Instead, the standard is satisfied when the totality of the circumstances creates a fair probability that ... evidence of a crime will be found in a place. *United States v. Hicks*, 575 F.3d 130, 136 (1st Cir. 2009).

Yet, a warrantless Fourth Amendment seizure needs an objective and particularized justification. *United States v. Mendenhall*, 446 US 554, 551 (1980). In general, the Fourth Amendment applies to all seizures of the person, including seizures that include only a brief detention short of traditional arrest. *United States v. Brignioni-Ponce*, 422 US 873, 878 (1975). The government cannot violate the Fourth Amendment – in the only way in which the government can do anything, namely through its agents – and use the fruits of such unlawful conduct to secure a conviction. Nor can the government make indirect use of such evidence for its case, or support a conviction on evidence obtained through leads from unlawful obtained evidence. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men. *Walder v. United States*, 347 U.S. 62, 64-65 (1954).

As a result, a warrantless search is legal only if an exception curtails the Fourth Amendment threshold. *Katz v. United States*, 389 U.S. 347, 357 (1967). There is a rebuttable presumption of unreasonableness where the arrest emanates from a warrantless intervention. As a result, it is the Government's responsibility to demonstrate that the warrantless search or seizure was reasonable and falling under any of the well-delineated exceptions to the Fourth Amendment's warrant requirement. *See United States v. Lopez, 380* F.3d 538, 543 (1st Cir. 2004).

**B.     The Automobile exception to the 4th Amendment warrant mandate.**

Vehicles present a lessened Fourth Amendment expectation of privacy, due to their mobility and access to the public. *New York v. Class*, 475 U.S. 106, 112 (1986). Nevertheless, the Supreme Court has made very clear that temporary detentions of individuals during the stop of a vehicle, even if for a limited period, scope and purpose, is considered a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–558 (1976). There are two requirements for a lawful intervention of a vehicle in search of weapons: First, a law enforcement officer must have lawfully stopped the vehicle that is the subject of the frisk. Like the investigative detention of a person, this element requires that the officer have a reasonable suspicion, based upon specific and articulable facts, that criminal activity is afoot and that the driver or passenger is involved in that criminal activity. *Terry v. Ohio,* 392 U. S. 1 (1968). The second requirement is that the officer have a reasonable belief that the driver or passenger is dangerous and may gain immediate control of a weapon. *Arizona v. Johnson*, 555 U.S. 323 (2009).

Nevertheless, a citizen does not yield his Fourth Amendment rights by entering an automobile. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Before a warrantless search of a vehicle can be upheld, the government has the burden of proving that the searching officers had

probable cause to believe that contraband would be found inside the vehicle. *United States v. Ross*, 456 U.S. 798, 808 (1982). Specifically, the government must demonstrate that law enforcement officers had 'a belief, reasonably arising out of circumstances known to the seizing officer, 'that the vehicle 'contained that which by law is subject to seizure and destruction[.]'" *United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2009) (internal quotations omitted). In sum, a generic suspicion, or a hunch, are insufficient to activate a Fourth Amendment exception. Hence, the Government must evince the specific reasonable inferences the agent utilized based on the facts of the case, and his experience, to determine the reasonableness of the agent's conduct. *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). Moreover, a full vehicle search cannot be predicated on a traffic violation. *Knowles v. Iowa,* 525 U.S. 113, 118 (1998).

### C. The Plain view exception to the Fourth Amendment

To be reasonable, plain view [searches] and seizures must comply with three main elements: "(1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a "lawful right of access to the object itself." *Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *United States v. Antrim*, 389 F.3d 276, 283 (1st Cir. 2004)(quoting *United States v. Jones*, 187 F.3d 210, 219-21 (1st Cir. 1999)). The "plain view" cases have in common the fact that the "police officer had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).

### D. Fruit of the poisonous tree doctrine

An illegal warrantless detention and eventual seizure entails the suppression of all the evidence attained in violation of the Fourth Amendment, as a byproduct of the officers' sanctioned conduct, or as it better known, as fruit of the poisonous tree. *Wong Sun v. U.S.*, 371

8

U.S. 471, 484-85 (1963). Accordingly, any evidence that was occupied – directly or indirectly – due to a Fourth Amendment infraction will be suppressed, and, in turn, inadmissible as substantive evidence against the defendant. *Wong Sun*, 371 U.S. at 485.

Accordingly, the poisonous tree doctrine prevents admission into evidence any statements or identifications that stem from the original illegal seizure:

> [T]he exclusionary sanction applies to any "fruits" of a constitutional violation-- whether such evidence be tangible, physical material actually seized in an illegal search, items observed or words overheard in the course of the unlawful activity, or confessions or statements of the accused obtained during an illegal arrest and detention.

*U.S. v. Crews*, 445 U.S. 463, 471 (1980)(emphasis ours). As a result, if the defendant evinces the police conduct an illegality, the burden turns to the Government to demonstrate the existence of an independent source that would have led to the seizure regardless of the Government conduct in question. *Brown v. Illinois*, 422 U.S. 590 (1975); *Dunaway v. New York*, 442 U.S. 200 (1979). If not, the evidence will remain suppressed as an indirect byproduct of the Government's misconduct. *Taylor v. Alabama*, 457 U.S. 687 (1982).

### E. Puerto Rico Transit Law

Article 10.05 of the Puerto Rico Transit Law prohibits the use of unidirectional tinted windows on private automobiles that permit light transmission of less than 35%. Amongst other exceptions, factory equipped vehicles are exempt from this prohibition.

### V. Argument

#### A. The stop of the vehicle and warrantless search was illegal.

The inquiry of whether an officer has reasonable suspicion to conduct a search requires a consideration of "the totality of the circumstances to see whether the officer had a particularized, objective basis for his or her suspicion." *United States v. McKoy*, 428 F.3d 38, 39 (1st Cir.2005) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002). However, where the officer stops a

driver based upon a mistake of law, the officer's suspicion is not reasonable and the stop will be invalidated.

Here, the stop of Mr. Rivera Cuevas's vehicle and the seizure of him were unjustified from the beginning, hence, the first condition required by *Terry* and applied to vehicle passengers by *Arizona v. Johnson* is defeated. This is a straight-forward case of a lack of reasonable suspicion to stop the vehicle and probable cause to search the vehicle. Assuming arguendo that the government version of events is accurate, it is not reasonable for the police officer to discern whether the window tint of a moving vehicle is below 35% at 10:40 pm in the dark of the night. Again, assuming arguendo that the government version of events it accurate, if the windows were as dark as claimed, a) a flashlight will not penetrate the window tint enabling someone standing outside of a vehicle to see inside the vehicle; b) a plain view search is not plain view if that view is enhanced by the assistance of a flashlight. Thus, even according to his own version of events, the police officer did not have reasonable suspicion to stop the vehicle nor, as a result, probable cause to conduct a warrantless search of the vehicle.

As for Mr. Rivera Cuevas's version of the events, no traffic infraction occurred because no Puerto Rico Transit Law was violated. This conclusion is based upon the following: a) the window tint installed by the factory is an exception to the prohibition of unidirectional window tints and Mr. Rivera Cuevas's vehicle had factory installed window tints on the rear windows; b) if the window tints permit light transmission of 35% or above no violation of the law occurred and here Mr. Rivera Cuevas installed window tint on the front windows at 35% light transmission in compliance with 10.05 Article of the Puerto Rico Transit Law; c) Mr. Rivera Cuevas was not operating the vehicle on the roads of Puerto Rico at the time of the stop and warrantless seizure, rather had been sitting in his vehicle that was parked off the road for approximately 15 minutes in order to safely use his cellphone – a phone that was seized by law

enforcement and that, contrary to the PRPD version of events, will demonstrate this time frame via the phone's date, time and location services and GPS application; d) that the inquiry by the police officer regarding whether Mr. Rivera Cuevas was waiting for El Arabe raises legitimate questions about the justification for the stop and warrantless seizure, given the judicial precedent stating that where, as here, the police stops a car for a minor traffic infraction and then pointedly questions the occupants about other crimes unrelated to the violation, "such scenarios … raise legitimate concerns about abuse of authority." *United States v. Chhien*, 266 F.3d 1, 9 (1st Cir. 2004); e) the PRPD claim that Mr. Rivera Cuevas would leave a firearm sitting on top of the passenger seat knowing that he is a felon and knowing that police officers have just stopped his car and are approaching is not reasonable. Therefore, again, the police officer did not have reasonable suspicion to stop the vehicle nor, as a result, probable cause to conduct a warrantless search of the vehicle.

**B.     The police officer illegally "seized" Mr. Rivera Cuevas prior to seeing the firearm and the plain view exception does not apply to the specific circumstances here.**

Assuming for argument's sake that the original detention was warranted, the evidence seized in the vehicle was obtained in violation of *Arizona v. Gant.* Specifically, Mr. Rivera Cuevas was ordered to exit the vehicle as soon as the detention ensued and only afterwards was the firearm discovered within the car. Mr. Rivera Cuevas was seized for Fourth Amendment purposes. Thus, the disappearance of the risk of flight or danger to the agents mandates that they seek a warrant prior to searching the vehicle.

In September 5, 2011, the U.S. Department of Justice published its *Investigation of the Puerto Rico Police Department* (from now on Investigation PRPD). Under subsection '*PRPD Engages in a Pattern and Practice of Unconstitutional Searches and Seizures'* the report states "PRPD regularly violates the Constitutional Rights of civilians through illegal searches,

detentions and arrest." Later in the same page it states, "the evidence we uncovered further demonstrates that PRPD officers engage in a regular pattern of detaining and arresting individuals without reasonable suspicion or probable cause in violation of the Fourth Amendment…" *Investigation PRPD* at pg. 45. "We found that unconstitutional search and seizures are a widespread problem. There is a pattern and practice of search and seizures without probable cause for illegal purposes and otherwise in violation of the Constitution." *Investigation PRPD* at pg. 46.

Mr. Rivera Cuevas's Fourth Amendment Constitutional rights were violated by an unreasonable search and seizure performed by the police during the traffic stop. Mr. Rivera Cuevas had a clear and legitimate expectation of privacy of the items on his person and inside of his car. Mr. Rivera Cuevas did not consent to the search and seizure. The warrantless search and seizure of Mr. Rivera Cuevas's vehicle was neither justifiable nor legal, and illegally intrusive of his privacy.

## VI. HEARING REQUESTED

A hearing on a motion to suppress is required when there is a dispute concerning issues of fact relevant to the legality of a search. An evidentiary hearing needs be held when "the moving papers allege facts with sufficient specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved". *See, e.g., United States v. DiCesare,* 765 F.2d 890 (9th Cir.), *amended,* 777 F. 2d 543 (9th Cir. 1985); *Gentile v. County of Suffolk,* 926 F.2d 142, 147 (2nd Cir. 1991). In the above-captioned case, the government conducted a warrantless search of a vehicle. There are issues of fact relevant to the legality of the search and the constitutionality propriety of the traffic stop of the vehicle.

A hearing is necessary to assess the credibility of the officers involved in the intervention as well as any other evidence and testimony that may be presented. Accordingly, an evidentiary

hearing is hereby requested. Defense counsel has no objection to this case being referred to a U.S. Magistrate Judge for a hearing and subsequent Report and Recommendation.

## VII. CONCLUSION

In view of all of the above, Mr. Rivera Cuevas respectfully submits that the evidence the government intends to use against him at trial was obtained in violation of his Fourth Amendment rights. The search of the vehicle was conducted without a warrant. There was neither contraband nor evidence of a crime in plain view nor did Mr. Rivera Cuevas consent to a search. Moreover, the officer stopped the vehicle illegally and his suspicion was not reasonable and the stop was invalid.

**WHEREFORE**, the Defendant, ALEXYS RIVERA CUEVAS, by and through his undersigned counsel, prays this Honorable Court will take notice of the present Dispositive Motion to Suppress and that the same be granted after an evidentiary hearing is conducted.

>                                       Respectfully submitted,
>                                       By: /s/ Tim Bower Rodriguez
>                                             Tim Bower Rodriguez, Esquire
>                                             Puerto Rico Federal Bar No.: 300809
>                                             Tim Bower Rodriguez, PA
>                                             601 N. Ashley Drive #310
>                                             Tampa, Florida 33602
>                                             Direct:      (813) 384-7555
>                                             Facsimile:   (866) 203-2532
>                                             Email: t@bowerrodriguez.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY on May 11, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to the electronic mail addresses of record.

>                                       By: /S/ Tim Bower Rodriguez